## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| TONI WILSON, ),, | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No. 19-cv-03094** |
| CITY OF SPRINGFIELD, and ) | |
| Springfield Police Officer JAMES ) | |
| WANGARD, ) | |
| ) | |
| **Defendants.** ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

This cause is before the Court on Defendants' Motion to Dismiss (d/e 13).  The motion is DENIED.  Counts I through IV of Plaintiff Toni Wilson's Complaint (d/e 1) state claims upon which relief can be granted.  However, Plaintiff's claim against the City of Springfield in Count II of the Complaint is DISMISSED as duplicative of Plaintiff's claim in Count III, leaving only Plaintiff's claim against Defendant James Wangard with respect to Count II.

# I. BACKGROUND

The following facts come from Plaintiff's Complaint. The Court accepts them as true in ruling on Defendants' motion to dismiss. See Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

On September 29, 2018, Defendant James Wangard, an officer with the Springfield Police Department (SPD), along with other SPD officers, arrested a teenager. Complaint (d/e 1), ¶¶ 5, 8. During the arrest, the teenager, who was using his phone to stream the arrest on Facebook Live, asked Wangard, "Somebody is snitching, ain't they?" Id. ¶¶ 9, 11. Snitching is the act of providing law enforcement with information on another person in order to obtain lenient treatment. Id. ¶ 12. Snitches are routinely harmed if others in the community suspect that they are snitching. Id. ¶ 14.

The teenager being arrested stated that he was going to "pop their ass" in reference to the snitch. Id. ¶ 13. Wangard stated that the teenager would probably be a snitch by the end of the night. Id. ¶ 15. The teenager replied, "On my life, I ain't telling nothing. I don't snitch." Id. ¶ 16.

Wangard then stated, "Steven Wells is the snitch," and leaned toward the teenager's phone and repeated the name "Steven Wells."

<u>Id.</u> ¶ 18.  In response, the teenager called out to his friend, stating "Hey Dev, Dev, you heard him?"  <u>Id.</u> ¶ 19.  The teenager also asked Wangard to repeat what Wangard has just said.  <u>Id.</u>  Wangard replied, "Steven Wells."  <u>Id.</u> ¶ 20.  The teenager asked, "What about him?"  <u>Id.</u> ¶ 21.  Wangard stated, "Is the snitch."  <u>Id.</u> ¶ 22.  The teenager told Wangard that someone had given Wangard incorrect information.  <u>Id.</u> ¶ 23.  Wangard responded, "No, no, Steven Wells said you are the one."  <u>Id.</u> ¶ 24.  The teenager pointed his phone at Wangard, whose face was displayed on Facebook Live.  <u>Id.</u> ¶ 25.  During the live stream, someone posted a comment stating that they would "beat they ass" in reference to the snitch.  <u>Id.</u> ¶ 27.

Plaintiff Toni Wilson is Steven Wells' mother, and the two of them live in the same home.  <u>Id.</u> ¶ 28.  Plaintiff was never informed about the teenager's arrest or the comments made by Wangard to the teenager during the arrest.  <u>Id.</u> ¶ 29.  On October 1, 2018, two days after the teenager's arrest and the Facebook Live stream of the conversation between the teenager and Wangard, two armed individuals approached Plaintiff as she sat on her porch.  <u>Id.</u> ¶ 30.  The armed individuals opened fire, shooting Plaintiff three times.

Id. ¶¶ 30-31.  Plaintiff was transported to St. John's Hospital via ambulance.  Id. ¶ 32.

On April 10, 2019, Plaintiff filed a four-count Complaint against the City of Springfield and Wangard, in his individual capacity.  In Count I, Plaintiff asserts a claim against Wangard pursuant to 42 U.S.C. § 1983 based on a violation of Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment. In support of this claim, Plaintiff alleges that Wangard created a danger to Plaintiff and her family by disclosing to an individual who had been arrested that the arrest occurred because Plaintiff's son was a snitch.  Id. ¶¶ 37, 40.  Plaintiff also alleges that Wangard knows that snitches are targeted by individuals engaged in criminal activity and that Wangard acted with deliberate indifference to Plaintiff.  Id. ¶¶ 39, 41.  As a proximate result of Wangard's actions, Plaintiff sustained injuries.  Id. ¶ 42.

In Count II, Plaintiff asserts willful and wanton misconduct claims against the City of Springfield and Wangard.  In support of these claims, Plaintiff alleges that Wangard and the City of Springfield breached their duty to refrain from willful and wanton misconduct by disclosing that Steven Wells is a snitch and

informing individuals that they were being arrested because of Steven Wells.  Id. ¶¶ 44-45.  Plaintiff alleges that these actions were taken "in a willful and wanton and/or reckless manner and/or in disregard of Plaintiff's safety."  Id. ¶ 45.  As a proximate result of the actions of Wangard and the City of Springfield, Plaintiff sustained injuries.  Id. ¶ 46.

Count III asserts a claim against the City of Springfield under Illinois law based on the theory of respondeat superior.  Plaintiff alleges that the City of Springfield is liable for the actions of its agents and that Wangard's actions "described in the above state-law claims for battery were willful and wanton, and committed in the scope of employment."  Id. ¶¶ 47-48.

Count IV asserts an indemnification claim under Illinois law against the City of Springfield.  The claim, which is brought pursuant to 745 ILCS 10/9-102, is based on Wangard's alleged willful and wanton misconduct and seeks to require the City of Springfield to satisfy any judgment against Wangard.  Id. at 6.

On July 2, 2019, Defendants filed their Motion to Dismiss. Defendants seek dismissal of Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that

Plaintiff has not asserted any claims upon which relief can be granted. Defendants also argue that Wangard is entitled to qualified immunity on Count I.

On July 11, 2019, Plaintiff filed a Response to Defendants' Motion to Dismiss (d/e 16). Plaintiff contends that the Complaint sufficiently sets forth cognizable claims in each of Counts I through IV and that Wangard is not entitled to qualified immunity on Count I.

## II. LEGAL STANDARD

A complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Factual allegations are accepted as true at the pleading stage, but allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." Adams v. City of Indianapolis, 742 F.3d 720, 728 (7th Cir. 2014) (internal quotation marks omitted). The court must draw all

inferences in favor of the non-moving party.  In re marchFIRST Inc., 589 F.3d 901, 904 (7th Cir. 2009).

## III. ANALYSIS

### A. Count I states a claim against Wangard upon which relief can be granted.

Count I of Plaintiff Complaint asserts a § 1983 claim against Wangard based on a violation of Plaintiff's due process rights that occurred because Wangard created a danger to Plaintiff by disclosing that an arrest had occurred because Plaintiff's son was a snitch.  Generally, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  DeShaney v. Winnebago Cnty. Dept. of Social Servs., 489 U.S. 189, 197 (1989).  This general rule is based on the fact that the purpose of the Due Process Clause "was to protect the people from the State, not to ensure that the State protected them from each other."  Id. at 196.

The general rule that a State does not violate a person's substantive due process rights by failing to protect that person from private violence is not absolute, however.  An exception to the general rule, the "state-created danger" exception, applies "when a

state actor's conduct creates, or substantially contributes to the creation of, a danger or renders citizens more vulnerable to a danger that [sic] they otherwise would have been." <u>D.S. v. E. Porter Cnty. Sch. Corp.</u>, 799 F.3d 793, 798 (7th Cir. 2015) (internal quotation marks omitted). This exception is a narrow one. <u>Flint v. City of Belvidere</u>, 791 F.3d 764, 770 (7th Cir. 2015); <u>see</u> <u>also</u> <u>Doe v. Village of Arlington Heights</u>, 782 F.3d 911, 917 (7th Cir. 2015) (noting that the cases in which the Seventh Circuit has "either found or suggested that liability attaches under the 'state-created danger' exception are rare and often egregious").

To state a claim under the "state-created danger" exception, a plaintiff must allege that "(1) defendants, by their affirmative acts, created or increased a danger to the plaintiff; (2) defendants' failure to protect the plaintiff from that danger proximately caused plaintiff's injuries; and (3) defendants' failure to protect the plaintiff 'shocks the conscience.'" <u>Flint</u>, 791 F.3d at 770. The requirement that State action created or increased a danger to the plaintiff "must not be interpreted so broadly as to erase the essential distinction between endangering and failing to protect." <u>Sandage v. Bd. of Comm'rs of Vanderburgh Cnty.</u>, 548 F.3d 595, 599 (7th Cir.

2008).  In order to increase a risk of private violence so as to be liable to the victim for her injuries, the State must do more than just stand by and do nothing to prevent private violence; the State must act so as to transform "a potential danger into an actual one." Id. at 600.

In determining whether a danger has been created or increased, the Court must determine (1) what affirmative acts the State took and (2) what dangers the plaintiff would have faced had the State not taken those actions.  Wallace v. Adkins, 115 F.3d 427, 430 (7th Cir. 1997).  The second inquiry requires a comparison of the danger the plaintiff faced after the State's affirmative acts with the danger the plaintiff faced before those acts were taken, not with the danger that the plaintiff would have faced had the State done what the plaintiff expected it to do.  Id.  The third requirement of the "state-created danger" exception—that the State's failure to protect the plaintiff "shocks the conscience"—is "an attempt to quantify the rare 'most egregious official conduct' required for substantive due process liability."  Flint, 791 F.3d at 770.

Count I of Plaintiff's Complaint states a plausible § 1983 claim against Wangard.  The Federal Rules of Civil Procedure require that

a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). A plaintiff need not plead enough facts to show that she is likely to prevail on her claim; rather, she is required only to include enough facts to raise her claim from speculative to plausible. See Iqbal, 556 U.S. at 678.

Plaintiff alleges that Wangard's statements identifying Steven Wells as a snitch placed Plaintiff in danger, that Wangard failed to warn Plaintiff about Wangard's statements, and that Wangard's actions were made in deliberate indifference to Plaintiff's safety and were the proximate cause of Plaintiff's injuries. Plaintiff also alleges that Wangard made the statements about Wells with the knowledge that snitches are targeted by individuals engaged in criminal activity. These allegations are sufficient to state a plausible § 1983 claim based on a violation of Plaintiff's due process rights under the "state-created danger" exception.

Defendants argue otherwise, taking the position that Plaintiff's allegations that Wangard's actions put Plaintiff in danger and that Wangard's actions were a proximate cause of Plaintiff's injuries are too speculative to state a plausible claim. In support of this

argument, Defendants note that Plaintiff and her son have different last names and that Plaintiff does not identify the individuals who shot her or the reason that these individuals shot her. Defendants also argue that the time that elapsed between Wangard's statements about Wells and Plaintiff's injuries—two days—makes it unlikely that the events are causally related.

However, Plaintiff does identify the reason why armed individuals shot her while she was sitting on her front porch—the statements made by Wangard about Plaintiff's son being a snitch. Further, Plaintiff's claim is cognizable even assuming that Plaintiff's claim is less likely to succeed because she has a different last name than her son, does not know the identities of the individuals who shot her, and suffered her injuries two days after Wangard's statements. Plaintiff is required to plead a plausible claim, not a claim that is likely to succeed. See Iqbal, 556 U.S. at 678. Based on the facts alleged in Plaintiff's Complaint, it is reasonable to infer that Plaintiff was shot as a result of Wangard's statements. And Wangard's failure to protect Plaintiff after identifying her son as a snitch shocks the consciences, particularly given Wangard's knowledge that snitches are a target of reprisals by individuals

engaged in criminal activity.

Count I of Plaintiff's Complaint alleges that Plaintiff was injured as a result of statements made by Wangard to a person being arrested indicating that the arrest occurred because Steven Wells, Plaintiff's son, was an informant, statements that were broadcasted via Facebook Live. Count I states a plausible § 1983 claim based on the "state-created danger" exception to the general rule that the State does not violate a person's substantive due process rights by failing to protect that person from private violence.

## B.   Wangard is not entitled to qualified immunity on Count I.

Qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. <u>Pearson v. Callahan</u>, 53 U.S. 223, 231 (2009). To counter a claim of qualified immunity, a plaintiff must show (1) that the official violated a statutory or constitutional right and (2) that the right was clearly established at the time of the alleged conduct. <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735 (2011). Qualified immunity is generally dependent on the facts of the case, and dismissal at the pleading stage on the basis of qualified

immunity is rarely appropriate.  See <u>Alvarado v. Litscher</u>, 267 F.3d 648, 651-52 (7th Cir. 2001).

For a right to be "clearly established," the right must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).  Existing case law need not be identical to the situation at hand to meet this burden.  See <u>Nabozny v. Podlesny</u>, 92 F.3d 446, 456 (7th Cir. 1996) ("Under the doctrine of qualified immunity, liability is not predicated upon the existence of a prior case that is directly on point.").

As explained above, Plaintiff has set forth facts upon which a reasonable jury could conclude that Wangard violated Plaintiff's due process rights by identifying Steven Wells as a snitch and failing to protect Plaintiff from the danger Wangard's statements created. Therefore, qualified immunity shields Wangard from liability only if the constitutional right he is alleged to have violated was not clearly established when Wangard made the statements about Wells.

Based on the facts alleged in the Complaint, the Court finds that the right Wangard is alleged to have violated was clearly established at the time of Wangard's statements about Steven

Wells.  In <u>Monfils v. Taylor</u>, a paper mill employee left an anonymous tip with police that one of his coworkers was going to steal property from their employer.  165 F.3d 511, 513 (7th Cir. 1998).  The tipster made several follow-up calls and pleaded with numerous police officers not to release a tape recording of the anonymous tip to the person implicated by the tip.  <u>Id.</u> at 514.  On one of these follow-up calls, the tipster spoke to a police detective, who assured the tipster that the tape would not be released but did nothing to follow through on that assurance.  <u>Id.</u>

The tipster subsequently called the district attorney's office and spoke to an assistant district attorney, who agreed to call the police detective and order that the tape not be released.  <u>Id.</u> at 515. The assistant district attorney made the call, and the police detective assured the assistant district attorney that the tape would not be released.  <u>Id.</u>  However, after checking the computer system and finding no report on the tipster's call, the police detective did nothing more.  <u>Id.</u>  Another officer released a copy of the tape to the would-be thief, and the tipster was killed the next day.  <u>Id.</u>

The Seventh Circuit held that the police detective who assured the tipster and the assistant district attorney that the tape would

not be released was not entitled to qualified immunity on the plaintiff's due process claim based on the "state-created danger" exception.  Id. at 518.  By making assurances that the tape would not be released but failing to follow through on those assurances, the detective "created a danger [the tipster] would not have otherwise faced."  Id.

In this case, while making an arrest, Wangard made statements to a person being arrested that identified Steven Wells as the snitch who provided the information that led to the arrest. Those statements were broadcast to other individuals via Facebook Live.  The person getting arrested and one person watching the Facebook Live stream made statements about harming the snitch. Two days later, multiple individuals approached the home where Wells resided with Plaintiff and opened fire on Plaintiff as she sat on the porch.  As was the case with the tipster in Monfils, Wells and Plaintiff were safe, or at least considerably safer, before Wangard made statements about Wells during the arrest that took place on September 29, 2018.

Although Monfils involved the informant being harmed, not the informant's mother, nothing in Monfils suggests that the

outcome would have been any different had the person harmed been someone who resided with the tipster. Indeed, the relevant question is whether the person harmed was placed in danger as a result of State action. That is exactly what Plaintiff is alleging, and it is at least plausible that Wangard's statements about Steven Wells put Plaintiff, who lives with Wells, in danger and resulted in Plaintiff's injuries.

Given the holding in <u>Monfils</u>, any reasonable police officer in Wangard's position would have understood that disclosing the name of an informant to the person being arrested as a result of the informant's information created a risk of harm to the informant and others residing with the informant. Any such officer would have also known that the failure to protect those who were put in danger because to the officer's disclosure violated those individuals' rights under the Due Process Clause. Plaintiff has met her burden in showing that the constitutional right that Wangard is alleged to have violated was clearly established at the time Wangard made statements about Steven Wells. Therefore, Wangard is not entitled to qualified immunity on Count I of Plaintiff's Complaint.

**C.    Count II states a claim against Wangard upon which relief can be granted.**

In Count II of the Complaint, Plaintiff asserts state law claims for willful and wanton misconduct against Wangard and the City of Springfield.  To state a claim under Illinois law for willful and wanton misconduct, a plaintiff must plead facts establishing the elements of a negligence claim—duty, breach, proximate causation, and harm—and "either a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff." Kirwan v. Lincolnshire–Riverwoods Fire Protections Dist., 811 N.E.2d 1259, 1263 (Ill. App. Ct. 2004) (quoting Adkins v. Sarah Bush Lincoln Health Ctr., 544 N.E.2d 733, 743 (Ill. 1989)).

Reckless willful and wanton misconduct is conduct committed with an utter indifference of or a conscious disregard for the safety of others.  Id.  To meet this standard, the defendant "must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury." Id.

Plaintiff's allegations in Count II of the Complaint are

sufficient to plead a willful and wanton misconduct claim against Wangard. Plaintiff alleges that Wangard had a duty to refrain from willful and wanton misconduct and that Wangard breached that duty by disclosing that Steven Wells, Plaintiff's son, is an alleged snitch and by informing individuals that they were being arrested due to the actions of Wells, who resides in the same home as Plaintiff. According to Plaintiff, Wangard's actions were reckless, in disregard of Plaintiff's safety, and a proximate cause of Plaintiff's injuries. These allegations are sufficient to make it plausible that Wangard committed willful and wanton misconduct for which he is liable to Plaintiff. See Worthem v. Gillette Co., 774 F. Supp. 514, 517 (N.D. Ill. 1991) (holding that the plaintiff had sufficiently pleaded willful and wanton misconduct claims where she alleged that "willful and wanton acts or omissions [were] committed or omitted with conscious indifference to existing circumstances and conditions" and went on to "enumerate specific instances of willful and wanton conduct").

Count II of Plaintiff's Complaint also asserts a willful and wanton misconduct claim against the City of Springfield. The Complaint makes clear that the City of Springfield's alleged liability

on this claim is based solely on Wangard's actions.  And Plaintiff asserts a <u>respondeat</u> <u>superior</u> claim in Count III against the City of Springfield based on Wangard's alleged willful and wanton misconduct.  Accordingly, given the Court's analysis below regarding Count III, Plaintiff's claim against the City of Springfield in Count II is DISMISSED as duplicative.

**D.  Count III states a claim against the City of Springfield upon which relief can be granted**.

Count III of the Complaint asserts a state law claim against the City of Springfield based on the theory of <u>respondeat</u> <u>superior</u>. Under Illinois law, "an employer can be liable for the torts of his employee when those torts are committed within the scope of the employment" under the theory of <u>respondeat</u> <u>superior</u>.  <u>Adames v. Sheahan</u>, 909 N.E.2d 742, 754 (Ill. 2009).  Under this theory, "an employer's vicarious liability extends to the negligent, willful, malicious or even criminal acts of its employees, when those acts are committed within the scope of employment."  <u>Id.</u> at 755.

Defendants argue that Count III of the Complaint, in which Plaintiff asserts a <u>respondeat</u> <u>superior</u> claim against the City of Springfield, must be dismissed because it alleges that Wangard

committed battery instead of willful and wanton misconduct.

Plaintiff notes that the inclusion of the term "battery" in Count III of

the Complaint was a scrivener's error and that the basis for the

respondeat superior claim against the City of Springfield is

Wangard's willful and wanton misconduct.  Disregarding the

reference to "battery," Plaintiff's Complaint states that Wangard's

actions "described in the above state-law claims . . . were willful and

wanton, and committed in the scope of the employment" and that

the City of Springfield is liable under respondeat superior for its

agents' actions.  Complaint, ¶¶ 47-48.  Count II of the Complaint

sufficiently pleads a claim for willful and wanton misconduct

against Wangard under Illinois law based on actions taken by

Wangard as an SPD officer.  Accordingly, the Court finds that Count

III sufficiently pleads a respondeat superior claim against the City of

Springfield based on Wangard's alleged willful and wanton

misconduct.

**E.     Count IV states a claim against the City of Springfield upon which relief can be granted**.

In Count IV of the Complaint, Plaintiff seeks an order

requiring the City of Springfield to indemnify Wangard and pay any

compensatory damages for which the City of Springfield or Wangard is liable in this case. Under Illinois law, the City of Springfield is required to indemnify its employees and pay any compensatory damages "for which it or an employee while acting within the scope of his employment is liable." 745 ILCS 10/9-102; see also Sassak v. City of Park Ridge, 431 F. Supp. 2d 810, 822 (N.D. Ill. 2006). A plaintiff need not obtain a judgment against a municipal employee before bringing an indemnification claim under section 9-102. See Wilson v. City of Chicago, 120 F.3d 681, 684-85 (7th Cir. 1997).

Defendants argue that because Plaintiff has failed to allege facts sufficient to state a cognizable claim against Defendants under Illinois law for willful and wanton misconduct, Plaintiff also fails to state a cognizable claim for indemnification under Illinois law. However, as the Court has explained above, Plaintiff has met her burden in stating a claim against Wangard for willful and wanton misconduct in Count II of the Complaint. Accordingly, Defendants' argument that Count IV of the Complaint fails to state a cognizable indemnification claim is without merit.

## IV. CONCLUSION

Counts I through II of Plaintiff Toni Wilson's Complaint state claims against Defendant James Wangard upon which relief can be granted. Counts III and IV of Plaintiff's Complaint state claims against Defendant City of Springfield upon which relief can be granted. Accordingly, Defendants' Motion to Dismiss (d/e 13) is DENIED. The claim asserted in Count II against the City of Springfield is DISMISSED as duplicative of the claim asserted in Count III.


ENTER: March 27, 2020

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE